IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Thomas Pelzer, | ) | Case No. 8:10-cv-914-RMG-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Michael McCall; Jon Ozmint, Director | ) | |
| SCDC, a/k/a SCDC; Cecil Hawkins; Jean | ) | |
| Rutledge; Amy Enloe; Deborah Murrell; | ) | |
| Cathy Jones; Katherine Watson; Victoria | ) | |
| Balogun; Linda Corley; Benjamin Lewis; | ) | |
| Jane Doe, Dental Assistant, a/k/a Cheryl | ) | |
| Willis; and Monica Russell, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the various dispositive motions outlined below. Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on April 14, 2010, generally alleging deliberate indifference to his medical needs, inadequate medical care, and negligence by Defendants.[1] [Docs. 1, 48, 90.] On January 26, 2011, Defendant Monica Russell ("Russell") filed a motion to dismiss or, alternatively, a motion for summary judgment. [Doc. 63.] Plaintiff never

---

[1] Plaintiff amended his complaint on November 23, 2010 [Doc. 48] and on March 7, 2011 [Doc. 90] to add defendants and allegations, as well as relieve Defendant Victoria Balogun ("Balogun"), who was terminated as a party on November 23, 2010 [Doc. 46].

responded to Russell's motion. However, on March 2, 2011, Plaintiff filed a cross-motion for summary judgment as to Russell [Doc. 89], to which Russell filed a response in opposition [Doc. 95]. On March 8, 2011, after Plaintiff filed his Second Amended Complaint, Russell filed a motion to dismiss Plaintiff's Second Amended Complaint or, in the alternative, for summary judgment[2] [Doc. 94], to which Plaintiff filed a response [Doc. 105]. Russell filed a reply on March 17, 2011. [Doc. 108.]

On February 24, 2011, Plaintiff filed a motion for preliminary injunction against all defendants except Russell. [Doc. 83.] Defendants, except for Russell, filed a response in opposition on March 14, 2011. [Doc. 101.] Plaintiff filed a reply on March 21, 2011. [Doc. 111.]

On March 2, 2011, Plaintiff filed a motion for partial summary judgment as to Defendants Michael McCall ("McCall"), Jean Rutledge ("Rutledge"), Amy Enloe ("Enloe"), Benjamin Lewis ("Lewis"), and Deborah Murrell ("Murrell"). [Doc. 89.] Defendants, except for Russell, filed a response in opposition on March 21, 2011. [Doc. 110.] On March 16, 2011, after Plaintiff filed his Second Amended Complaint, he filed a second motion for partial summary judgment as to McCall, Rutledge, Enloe, Lewis, and Murrell.[3] [Doc. 106.] Defendants, except for Russell, filed a response in opposition on April 1, 2011. [Doc. 122.]

On March 21, 2011, Defendants, except for Russell, filed a motion for summary judgment. [Doc. 109.] Plaintiff filed a response in opposition on May 18, 2011. [Doc. 139.]

All motions are now ripe for review.

---

[2] Russell's first motion to dismiss [Doc. 63] was mooted by Plaintiff's Second Amended Complaint [Doc. 90].

[3] Plaintiff's first motion for partial summary judgment [Doc. 89] was mooted by his Second Amended Complaint [Doc. 90].

# **BACKGROUND**

Plaintiff, at all times relevant to this action, was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Perry Correctional Institution ("PCI") in the Special Management Unit ("SMU").[4] [Doc. 90 ¶ 1[5]; *see also* Doc. 109-4 ¶ 3.] Plaintiff alleges Defendants exhibited deliberate indifference to his medical needs; rendered inadequate medical care; were negligent and careless as to his health, safety, and constitutional rights; violated his right to seek redress of grievances; and violated his right to privacy. Plaintiff's alleged health issues include keloids, dental issues, lack of skin care products, and asthma. Specifically, Plaintiff has characterized his claims as follows:

> The Plaintiff has filed the present 42 U.S.C. Section 1983 civil rights action against the defendants, prison officials and medical staff members, for their deliberate indifference to Plaintiff's serious medical needs and failure to provide adequate medical care as a result of their deliberate indifference and inadequately trained sick call nurses. As well as their deliberate indifference to Plaintiff's serious dental needs, retaliating against Plaintiff for exercising his First Amendment right to seek redress of grievances, failing to provide adequate facilities and staff, and for transgressing the privacy of Plaintiff's medical issues in violation of his constitutional rights.

[Doc. 139-1 at 1.] Plaintiff seeks an injunction ordering Enloe and Lewis to be disqualified as a nurse practitioner and physician, respectively, and that they be terminated from their employment; nominal damages of $90,000 against each defendant jointly and severally; compensatory damages of $90,000 against each defendant jointly and severally; punitive

---

[4] Plaintiff remains in the custody of SCDC and housed at PCI. [*See* Doc. 139.]

[5] With respect to Plaintiff's documents, the paragraph numbers referenced by the Court are the paragraphs numbered by Plaintiff—i.e., the paragraph numbers that are handwritten on pages 4–19.

3

damages on $40,000 against each defendant jointly and severally; a declaration that the acts and omissions of Defendants violated Plaintiff's rights under the U.S. Constitution; Plaintiff's costs of suit; a jury trial; and any additional relief the Court deems just, proper, and equitable.  [Doc. 90 ¶¶ 54–59.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

**Requirements for a Cause of Action Under § 1983**

*Generally*

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.  Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

### Exhaustion of Administrative Remedies in Prisoner Cases

The Prison Litigation Reform Act ("PLRA") requires prisoners[6] to exhaust administrative remedies before filing a § 1983 action concerning their confinement. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

---

[6] The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones*, 549 U.S. at 218. However, as the United States Supreme Court has emphasized, a prisoner can exhaust only those administrative remedies that are available to him. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are *available* are exhausted." (emphasis added)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

8

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).

## DISCUSSION

**Motions Involving Russell**

Russell has filed two motions to dismiss or, alternatively, for summary judgment. [Docs. 63, 94.]  Plaintiff has filed a cross-motion for summary judgment with respect to Russell.  [Doc. 89.]  For the reasons set forth below, the Court recommends granting Russell's second motion for summary judgment and denying Plaintiff's cross-motion for summary judgment.

### *Exhaustion of Administrative Remedies*

Russell contends she is entitled to summary judgment on Plaintiff's claim because Plaintiff failed to exhaust his administrative remedies before initiating litigation against her as required by 42 U.S.C. § 1997e(a). The Court agrees.

As stated above, a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies, *Jones*, 549 U.S. at 218, although a prisoner can only exhaust those administrative remedies that are available to him, *Woodford*, 548 U.S. at 85. Plaintiff argues he exhausted his administrative remedies through Grievance No. PCI 1611-10, which he appealed through the grievance procedure at PCI but did not appeal to the Administrative Law Court ("ALC") because he had already appealed three grievances to the ALC and could not pay the filing fee to appeal any subsequent grievances. [Doc. 105-1 at 1; Docs. 79-1, 79-2.] However, the Court finds this grievance concerns alleged deficiencies in medical services by Enloe and Lewis and does not grieve any actions undertaken by Russell nor any lack of action by Russell. Even though the grievance policy may limit a prisoner to filing one grievance per incident or circumstance [Doc. 105-1 at 1], the Court finds Plaintiff's grievances against Enloe and Lewis, as outlined in Grievance No. PCI 1611-10 [Doc. 79-1], were a different incident or circumstance from the alleged deliberate indifference of Russell of which Plaintiff now complains. Moreover, even if his complaints against Russell arguably arose for the same incident or circumstance, Plaintiff has failed to demonstrate that PCI would not allow Plaintiff to submit a separate grievance concerning his issues with Russell or to include allegations against Russell in the grievance Plaintiff filed, such that a grievance procedure was not available to him. Therefore, the

10

Court finds that Plaintiff failed to exhaust his administrative remedies, and, consequently, Plaintiff cannot maintain a § 1983 action against Russell.  *See* 42 U.S.C. § 1997e(a).

However, in an abundance of caution, the Court will also address whether Plaintiff can maintain his causes of action against Russell as if he had exhausted his administrative remedies with respect to his claims against Russell.  As a public official, Russell is subject, in her individual capacity, to a § 1983 suit for damages.  *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).  Accordingly, the Court will consider whether there is a genuine issue of material fact as to whether Russell violated Plaintiff's constitutional rights.

### No Genuine Issue of Material Fact With Respect to Plaintiff's Claims Against Russell

Plaintiff claims Russell was deliberately indifferent to Plaintiff's serious medical condition of keloids and was grossly negligent as to Plaintiff's health and welfare.  [Doc. 90 ¶¶ 42, 49.]

#### *Deliberate Indifference*

Plaintiff argues Russell was deliberately indifferent to Plaintiff's medical condition of keloids by (1) not providing Plaintiff with a "haircut pass" to relieve Plaintiff of the obligation to get a haircut pursuant to SCDC rules after Russell told Plaintiff he should refrain from getting haircuts and (2) not diagnosing Plaintiff's condition as keloids, which resulted in inadequate treatment of his condition.  [Doc. 105-1 at 1.]  The Court disagrees.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104–05

11

(quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).  Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).  Within the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

Therefore, to prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  A showing that the prison officials were merely negligent, such that the treatment constituted medical malpractice will not establish deliberate indifference.  *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  Moreover, incorrect medical

12

treatment, such as an incorrect diagnosis, is not actionable under § 1983. *Estelle*, 429 U.S. at 106.

Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, there is no genuine issue of material fact as to whether Plaintiff's keloids were a sufficiently serious medical condition and whether Russell was deliberately indifferent to this medical condition.[7] Plaintiff relies on *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003), to establish that his keloids are a serious medical condition. In *Brock*, the Second Circuit stated some factors it has used to assess the seriousness of a prisoner's medical condition, including "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" 315 F.3d at 162 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d

---

[7] Plaintiff's claims as to Russell only concern the treatment of Plaintiff's keloids. [*See* Doc. 90.]

Cir. 1998)).  The Second Circuit concluded that it could not grant summary judgment to the defendants in *Brock* on the basis that the prisoner had failed to establish that a serious knife wound to his cheek that had begun to keloid was a serious medical condition.  *Id.* at 163.  The court noted that at the summary judgment stage, it must fully credit the prisoner's evidence, and the prisoner had brought forth enough evidence to establish a serious medical condition, if a jury fully credited the prisoner's evidence.  *Id.* at 163–64.  The prisoner's evidence included (1) the prisoner's statements that his scar caused chronic pain and interfered with the prisoner's activities of daily living; (2) a doctor's affidavit stating that keloids can cause disfigurement and constant pain, local irritation, and paresthesias, and, after examining the prisoner, the doctor found the prisoner could not smile, yawn, brush his teeth, chew food on the same side of his mouth as the scar, nor sleep on the same side as the scar without experiencing pain; (3) a dermatologist's report from before the keloid began to form stating that the dermatologist would have the prisoner get a steroid injection if the wound began to keloid; and (4) after the keloid began to form, referrals from a nurse and a doctor at the correctional facility for an outside consultation with a dermatologist.[8] *Id.* at 161, 163.

Plaintiff misconstrues the Second Circuit's holding in *Brock* with respect to the seriousness of the prisoner's medical condition.  Contrary to Plaintiff's contention, the Second Circuit did not hold that the prisoner's facial keloid was a serious medical condition [*see* Doc. 139-1 at 5]; the Second Circuit merely held that taking the prisoner's allegations as true, it could not grant summary judgment in favor of the defendants.  Moreover, unlike

---

[8] The prisoner's keloid in *Brock* was also described as "large."  315 F.3d at 161.

14

the prisoner in *Brock*, Plaintiff has not put forth any objective medical evidence that his keloids cause the pain he alleges he experienced or that his keloids require a certain type of medical treatment.[9] Consequently, the Court finds no basis to conclude Plaintiff's keloids were a serious medical condition and, therefore, finds Plaintiff's keloids were not a serious medical condition.

Moreover, Plaintiff has failed to establish that Russell provided "treatment . . . so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" with a sufficiently culpable state of mind. *Miltier*, 896 F.2d at 851. In his pleadings, Plaintiff alleges only two encounters with Russell; first, Russell examined the bumps on the back of Plaintiff's head after Plaintiff explained the bumps had been there since 2009 and the bumps were irritable, itchy, and bled. [Doc. 90 ¶ 17.] Plaintiff alleges Russell told him not to get a haircut and that she would get Plaintiff something for the irritation and itching. [*Id.*] Less than a week later, Plaintiff alleges he received medication for the bumps. [*Id.* ¶ 18.] Plaintiff further alleges that he also received an ointment for the itching and irritation, which Russell gave him. [*Id.* ¶ 19.] Plaintiff complains that, two months after Russell told him not to get a haircut and after he had started taking the medication and using the ointment, he was made to get a haircut. [*Id.* ¶ 20.]

These allegations fail to establish grossly incompetent or inadequate treatment by Russell or that Russell acted with a sufficiently culpable state of mind. As Plaintiff alleges,

---

[9] After noting Plaintiff had a small cluster of keloids, Lewis, a physician at PCI, prescribed medication for Plaintiff. [Doc. 109-2 at 4–5, Encounter 113.] Although Lewis noted that Plaintiff may have a recurring problem with keloids, nothing in Lewis's report suggests Plaintiff's keloids were a serious medical condition. [*See id.*]

Russell responded to the exact complaints Plaintiff expressed to Russell when she examined him—after the examination, he received medication for the bumps and ointment for the itching and irritation, which were his complaints to Russell. Further, Plaintiff has failed to allege any injury resulting from Russell's failure to diagnose the bumps as keloids. Therefore, the Court cannot find that Russell's response to Plaintiff's complaints constitutes deliberate indifference.

### *Gross Negligence*

Plaintiff alleges Russell was grossly negligent as to Plaintiff's health and welfare. [Doc. 90 ¶ 49.] The Court disagrees.

First, gross negligence is not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995); *Ruefly v. Landon*, 825 F.2d 792, 793–94 (4th Cir. 1987). Negligence is a cause of action under state law, and § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989).

Second, to the extent Plaintiff alleges a state law cause of action pursuant to the South Carolina Tort Claims Act ("SCTCA"), the Court would have jurisdiction over the claim because it is part of the same case or controversy, arising from a common nucleus of operative fact as Plaintiff's § 1983 claims. 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The SCTCA provides that a governmental entity is liable for loss resulting from the supervision, protection, control, confinement, or custody of a prisoner if conducted in a grossly negligent manner. S.C. Code Ann. § 15-78-60(25). "Gross negligence is the intentional conscious failure to do something which it is incumbent

16

upon one to do or the doing of a thing intentionally that one ought not to do"; thus, gross negligence is the failure to exercise slight care.  *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000) (citing *Clyburn v. Sumter Cnty. Dist. Seventeen*, 451 S.E.2d 885 (S.C. 1994); *Richardson v. Hambright*, 374 S.E.2d 296 (S.C. 1988)).  Alternatively, gross negligence has been defined as the absence of care that is necessary under the circumstances.  *Id.* (citing *Hollins v. Richland Cnty. Sch. Dist. One*, 427 S.E.2d 654 (S.C. 1993)).

The Court has considered Plaintiff's and Russell's allegations and finds there is no genuine issue of material fact as to whether Russell failed to exercise slight care.  As discussed above, Plaintiff's own evidence shows Russell responded to Plaintiff's exact complaints. Therefore, the Court cannot find that Russell was grossly negligent in providing Plaintiff medical care.  As a result, the Court recommends granting Russell's second motion to dismiss or, alternatively, motion for summary judgment and denying Plaintiff's cross motion for summary judgment as to Russell.

**Motions Involving All Other Defendants**

Plaintiff has filed a motion for a preliminary injunction against all defendants except Russell[10] and two motions for partial summary judgment against McCall, Rutledge, Enloe, Lewis, and Murrell.  [Docs. 83, 89, 106.]  Additionally, Defendants have filed a motion for summary judgment.  [Doc. 109.]  The Court will first consider Plaintiff's motion for a preliminary injunction.  Then the Court will consider Plaintiff's motions for partial summary

---

[10] As none of the motions within this section of the Court's discussion involve Russell, any reference to "Defendants" refers to all defendants except Russell.

judgment together with Defendants' motion for summary judgment, as these motions and responses in opposition address the same issues.

### *Preliminary Injunction*

In his motion for a preliminary injunction, Plaintiff requests an injunction requiring Defendants to allow Plaintiff to pick a treatment for his keloids, after he receives information regarding the risks of each of the following treatments: (1) corticosteroid shots, (2) freezing the scar, (3) wearing silicone sheets over the scar, (4) laser therapy, (5) radiation therapy, and (6) surgery. [Doc. 83.] Plaintiff contends that without receiving one of these forms of treatment, he will suffer irreparable harm, and he further contends that he is likely to succeed on the merits of the underlying action, the balance of equities is in his favor, and granting the preliminary injunction is in the public interest. [Doc. 83-2.] The Court disagrees.

Usually, a preliminary injunction "protect[s] the status quo . . . to prevent irreparable harm during the pendency of a lawsuit [and] ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003). However, mandatory preliminary injunctions, which compel action, "do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (citing *Interstate Commerce Comm'n v. Baltimore & Annapolis R.R. Co.*, 64 F.R.D. 337 (D. Md. 1974)). Therefore, "a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Microsoft*, 333 F.3d at 526.

In any event, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Coucil, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)).  To obtain a preliminary injunction, a plaintiff must show four elements:

1)     he is likely to succeed on the merits,

2)     he will suffer irreparable harm if the preliminary injunction is not granted,

3)     the balance of equities favors him, and

4)     the injunction is in the public interest.

*Id.* 374; *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009) (explaining how the *Winter* standard for preliminary injunctions is different from the standard previously applied in the Fourth Circuit), *judgment vacated and remanded*, 130 S. Ct. 2371 (2010), *in light of Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010).  The plaintiff must establish all four elements to receive injunctive relief. *Winter*, 129 S. Ct. at 374.

Under *Winter*, the Supreme Court requires "that the plaintiff make a clear showing that [he] will likely succeed on the merits at trial."  *Real Truth About Obama, Inc.*, 575 F.3d at 346 (citing *Winter*, 129 S. Ct. at 374, 376).  Moreover, the party seeking the injunction must make a clear showing that it will likely suffer irreparable harm without an injunction. *Id.* at 347 (citing *Winter*, 129 S. Ct. at 374–76).  Further, the Supreme Court in *Winter* emphasized the public interest requirement, *id.*, requiring courts to "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction,'" *Winter*, 129 S. Ct. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Here, as discussed below, Plaintiff cannot establish that he is likely to succeed at trial because there is no genuine issue of material fact as to whether Defendants violated Plaintiff's constitutional rights.  Because Plaintiff cannot establish this element, the Court need not consider the remaining three elements.  *See Winter*, 129 S. Ct. at 374 (stating that the plaintiff must establish all four elements to receive injunctive relief).  Therefore, the Court finds Plaintiff is not entitled to a preliminary injunction and recommends that Plaintiff's motion be denied.

### *Motions for Partial Summary Judgment and Summary Judgment*

The remaining motions for partial summary judgment and summary judgment address the following claims:

(1)    Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, including his keloids, dental needs, and asthma [Doc. 90 ¶ 42–43];

(2)    Plaintiff's claim that Defendants violated his Fourteenth Amendment right to equal protection by allowing prisoners in PCI's general population to receive skin care products while denying SMU prisoners access to skin care products [*id.* ¶ 44];

(3)    Plaintiff's claim that Defendants were grossly negligent as to Plaintiff's health and welfare [*id.* ¶ 49];

(4)    Plaintiff's claim that Hawkins and Willis violated Plaintiff's right to redress of his grievances by refusing to respond to Plaintiff's request forms and refusing to provide Plaintiff with dental care because Plaintiff filed a grievance against them [*id.* ¶ 43];

20

(5)     Plaintiff's claim that McCall, Ozmint, Rutledge, and Corley are liable in their supervisory capacity [*see id.* ¶ 46–47]; and

(6)     Defendants' claim that they are entitled to qualified immunity because their conduct did not violate any clearly-established rights of which a reasonable government official would have known [Doc. 109 at 5–6].

The Court addresses each argument in turn.

### Deliberate Indifference

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs, including his keloids, dental needs, and asthma. [Doc. 90 ¶ 42–43.] The Court disagrees.

As stated above, to prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind. *Goodman*, 2011 WL 1594915, at *1 (quoting *Johnson*, 154 F.3d at 167). When the prisoner claims prison officials were deliberately indifferent to his medical needs, the prisoner must show that "the treatment [was] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.

The Court has found that there is no genuine issue of material fact as to whether Plaintiff's keloids were a sufficiently serious medical condition. The Court also finds that because Defendants provided treatment for Plaintiff's complaints, they did not act with a

sufficiently culpable state of mind.[11]  Therefore, the Court concludes Defendants were not deliberately indifferent to Plaintiff's alleged medical conditions.

First, Plaintiff alleges Defendants were deliberately indifferent to his medical condition of keloids. [Doc. 90 ¶ 42.]  However, Plaintiff's medical records show he received the following treatment after he began complaining of bumps on the back of his head.  On October 20, 2009, Balogun, a registered nurse, examined Plaintiff after he complained of dandruff and a scab on the back of his head. [Doc. 109-3 at 2, Encounter 58.]  Balogun noted the presence of a scab with no bleeding or signs of infection. [*Id.*]  Following this examination, Enloe, a nurse practitioner, gave Plaintiff a sixty day prescription for tar shampoo, which can be used to treat itchiness as well as slow bacterial growth. [*Id.* at 3.]

On November 5, 2009, Plaintiff again complained of a bleeding bump on the back of his head. [*Id.* at 2, Encounter 61.]  Upon examination, the bumps were not bleeding or irritated. [*Id.*]  Because Plaintiff had already been prescribed tar shampoo, he was not prescribed any additional treatment for the bumps on his head.[12]  [Doc. 109-6 ¶ 4.]

On January 26, 2010, Plaintiff again complained about the bumps and contended that the tar shampoo was not working. [Doc. 109-2 at 16, Encounter 71.]  Cluster bumps were noted on the posterior part of his head. [*Id.*]  However, no bleeding or drainage was noted. [*Id.*]  Enloe prescribed Plaintiff Betamethasone cream, which is a corticosteroid

---

[11] Because the Court concludes Defendants did not act with a sufficiently culpable state of mind, the Court need not consider whether Plaintiff's asthma and dental issues were sufficiently serious medical conditions. *See Goodman*, 2011 WL 1594915, at *1 (quoting *Johnson*, 154 F.3d at 167) (stating that to prevail on an Eighth Amendment claim, a plaintiff must demonstrate *both* a sufficiently serious medical condition and that the officials acted with a sufficiently culpable state of mind).

[12] Plaintiff contends that he did not receive the tar shampoo until November 20, 2009, but he states no injury in relation to this alleged delay. [Doc. 90 ¶ 10.]

used as a topical cream to relieve skin irritation. [*Id.*] On January 31, 2010, Jones, a licensed practical nurse, informed Plaintiff of the Betamethasone cream in the officer's control room for the bumps on his head. [Doc. 109-7 ¶ 3.]

On May 4, 2010, Adetoro Sobowale, a nurse, examined Plaintiff's head based on his complaints, noting a small, tiny bump on the back of his head that was not red or irritated. [Doc. 109-2 at 11, Encounter 91.] On July 27, 2010, Russell examined Plaintiff and noted multiple small multiple bumps on the back of his head but observed no redness, swelling, drainage, or hair loss. [*Id.* at 8, Encounter 100.] Further, Russell instructed Plaintiff to keep the area clean and dry. [*Id.*] After Russell's examination, Enloe prescribed Keflex to treat possible infection and Triamicinolone cream, a topical corticosteroid, to treat inflammatory dermatoses. [*Id.*; Doc. 109-6 ¶ 4.]

On August 16, 2010, Plaintiff's prescription for Triamcinolone cream was renewed. [Doc. 109-2 at 7, Encounter 105.] On September 30, 2010, Plaintiff was again examined for complaints of bumps on the back of his head; a few "small, small" bumps on the back of his head were noted, with no redness or hair loss, and the bumps were described as looking like razor bumps. [*Id.* at 5, Encounter 111.]

On October 7, 2010, Lewis, a doctor, examined Plaintiff's head through his cell door. [*Id.* at 4–5, Encounter 113.] Lewis noted a small cluster of small keloids on Plaintiff's posterior scalp. [*Id.*] Lewis did not see any purlence. [*Id.*] As treatment for the keloids, Lewis prescribed Plaintiff Clobetasol 0.05% cream, a topical corticosteroid, and Doxycycline to ward against any possible infection. [*Id.*] Lewis advised Pelzer that he would have recurrent problems with keloids. [*Id.*] Lewis averred that Plaintiff's keloids were simply not a serious medical problem. [Doc. 109-8 ¶ 8.]

23

Second, while Plaintiff alleges that he has asthma that requires the use of an albuterol inhaler [Doc. 90 ¶ 38], Defendants have produced evidence that shows Plaintiff was examined and determined not to have asthma [Doc. 109-2 at 11; Doc. 109-6 ¶ 6] and inhalers are not allowed because they can be used as a cuff key [Doc. 109-6 ¶ 6]. In the face of Defendants' evidence, Plaintiff's bare allegations[13] are not sufficient to demonstrate a genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's alleged asthma. *See House v. New Castle Cnty.*, 824 F. Supp. 477, 485 (D. Del. 1993) (holding that a plaintiff's conclusory allegations are insufficient to maintain a claim, especially when the plaintiff fails to counter contradictory evidence in the record).

Last, Plaintiff alleges Hawkins, a dentist at PCI, and Defendant Cheryl Willis ("Willis"),[14] a dental assistant, were deliberately indifferent to Plaintiff's dental issues. [Doc. 90 ¶ 43.] However, Defendants have produced evidence that Plaintiff discussed his alleged dental issues with Hawkins and that Hawkins resolved Plaintiff's actual dental issues. For example, Plaintiff alleges that his gums often bled when he brushed his teeth. [Doc. 90 ¶ 30.] In September of 2009, because of Plaintiff's complaints of bleeding gums, Hawkins

---

[13] Defendants admit that one five-year-old report contains a notation regarding Plaintiff's asthma. [Doc. 109-1 at 3.] However, as Defendants point out, none of Plaintiff's SCDC internal transfer records note that Plaintiff suffers from asthma [Doc. 109-3 at 7–16], and the Court finds Defendants have produced ample evidence that is relevant to the period of Plaintiff's claims to overcome this one piece of evidence that supplements Plaintiff's allegations.

[14] Defendants move to dismiss Willis from this action because she was never properly substituted as a defendant. [Doc. 109-1 at 1 n.1.] In Plaintiff's Amended Complaint, Plaintiff alleges claims against PCI's dental assistant but does not otherwise name the dental assistant. [Doc. 48 ¶ 43; *see also* Doc. 29 ¶ 2.] In his Second Amended Complaint, Plaintiff refers to the dental assistant by name—Cheryl Willis—but does not move to add Willis as a defendant. [*See* Docs. 79, 90.] Therefore, Willis was never served. Because the Court finds Plaintiff has failed to state a claim as to Willis upon which relief may be granted, the Court recommends that Willis be dismissed as a party. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that a court may dismiss a case at any time if the court determines that the action fails to state a claim on which relief may be granted).

examined Plaintiff's teeth and performed a cleaning procedure that removes contamination and infection from beneath the gum. [Doc. 90 ¶ 31; Doc. 109-3 at 4–5; Doc. 109-5 ¶ 3.] Hawkins also prescribed Plaintiff Amoxicillin to prevent or remove any infection. [Doc. 109-3 at 4–5; Doc. 109-5 ¶ 3.] On November 5, 2009, Plaintiff again complained of bleeding gums when he brushed his teeth, but upon examination, no bleeding or infection was noted in relation to Plaintiff's gums. [Doc. 109-2 at 17; Doc. 109-3 at 1; Doc. 109-5 ¶ 4.] On July 28, 2010, a dental examination revealed Plaintiff's gingiva to be within normal limits, and no significant inflammation or infection was noted. [Doc. 109-2 at 7–8; Doc. 109-5 ¶ 6.]

Also at his July 28, 2010 dental exam, Plaintiff requested that three cavities be filled in teeth numbers 7, 10, and 12, but x-rays showed these teeth had existing fillings and no cavities. [*Id.*] Decay was found on teeth numbers 2 and 31; these cavities were asymptomatic, and Plaintiff was unaware of them. [*Id.*] Hawkins filled the cavities in teeth 2 and 31, and although chipped teeth do not generally require treatment, he smoothed a chip on the front of tooth number 9. [*Id.*] No further treatment was needed. [Doc. 109-5 ¶ 6.]

Despite all of the medical treatment he received, Plaintiff appears to disagree with the treatment provided to him. However, neither a misdiagnosis nor a disagreement with a doctor's chosen course of medical treatment state a claim of deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (stating that a prisoner's disagreement with a treatment plan does not constitute deliberate indifference unless exceptional circumstances are alleged) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) (per curiam); *see also Baylis v. Taylor*, 475 F. Supp. 2d 484, 489 (D. Del. 2007) (holding that prisoner failed to state a §

25

1983 claim for deliberate indifference to serious medical needs where he alleged that doctor stopped prescribing a particular medication prisoner deemed appropriate for treatment of his attention deficit disorder). Therefore, there is no genuine issue of material fact with respect to Plaintiff's claims of deliberate indifference, and the Court recommends granting summary judgment in favor of Defendants.

*Equal Protection*

Plaintiff alleges Defendants violated his Fourteenth Amendment right to equal protection by allowing prisoners in PCI's general population to receive skin care products while denying SMU prisoners access to skin care products. [Doc. 90 ¶ 44.]  In response, McCall averred that SMU prisoners are not allowed to purchase lotion from the canteen because of the security issues presented by SMU prisoners. [Doc. 109-4 ¶ 5.]  Further, Enloe averred that Plaintiff had no medical need for skin care products. [Doc. 109-6 ¶ 5.] As with Plaintiff's allegations as to his asthma, his bare allegations with respect to access to skin care products are not sufficient to create a genuine issue of material fact, *see House*, 824 F. Supp. at 485, and as to this claim, the Court recommends granting summary judgment in favor of Defendants.

*Gross Negligence*

Plaintiff alleges Defendants were grossly negligent as to Plaintiff's health and welfare. [Doc. 90 ¶ 49.]  The Court disagrees.

As stated above, gross negligence is not actionable under § 1983.  *See Daniels*, 474 U.S. at 328–36 & n.3; *Davidson*, 474 U.S. at 345–48; *Pink*, 52 F.3d 73; *Ruefly*, 825 F.2d at 793–94.  Further, to the extent Plaintiff alleges a state law cause of action pursuant to the SCTCA, over which the Court would have supplemental jurisdiction, 28 U.S.C. §

26

1367(a), Plaintiff must demonstrate that any loss resulting from his supervision, protection, control, confinement, or custody was the result of gross negligence as defined under South Carolina law, *see* S.C. Code Ann. § 15-78-60(25).  In South Carolina, "[g]ross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do"; thus, gross negligence is the failure to exercise slight care.  *Etheredge*, 534 S.E.2d at 277 (citation omitted).

The evidence does not demonstrate a genuine issue of material fact as to whether Defendants failed to exercise slight care in maintaining Plaintiff's health and welfare.  The evidence shows Defendants responded to Plaintiff's requests for medical care, although Defendants may not have provided Plaintiff with the medical care Plaintiff thought was appropriate.  Therefore, the Court cannot find that there is a genuine issue of material fact as to whether Defendants failed to exercise slight care and, as to this claim, recommends granting summary judgment in Defendants' favor.

### Right of Redress of Grievances

Plaintiff claims Hawkins and Willis violated Plaintiff's right to redress of his grievances by refusing to respond to Plaintiff's request forms and refusing to provide Plaintiff with dental care because Plaintiff filed a grievance against them.  [Doc. 90 ¶ 43.] First, there is no constitutional right to a grievance procedure.  *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977).  Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983).  Therefore, Plaintiff does not have a

§ 1983 cause of action based on his allegations that Hawkins and Willis refused to respond to Plaintiff's request forms.

Second, to the extent Plaintiff alleges Hawkins and Willis acted with deliberate indifference toward Plaintiff in retaliation for Plaintiff filing grievances against them, there is no genuine issue of material fact as to whether Hawkins and Willis violated Plaintiff's constitutional rights. To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams*, 40 F.3d at 75 (citing *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). As stated above, there is no constitutional right to a grievance procedure, *Jones*, 433 U.S. at 137–38; therefore, Plaintiff cannot establish that the alleged retaliatory act was taken in response to the exercise of a constitutionally protected right. Additionally, the Court has found Hawkins and Willis were not deliberately indifferent to Plaintiff's dental needs because they treated Plaintiff's dental issues. Consequently, the Court recommends that, as to this claim, summary judgment be granted in favor of Defendants.

*Right of Privacy*

Plaintiff alleges Lewis, one of PCI's attending physicians, violated Plaintiff's right to privacy by announcing in his dorm, while other prisoners were in the dorm, that Plaintiff had keloids. [Doc. 90 ¶ 48.] The Supreme Court has held that prisoners have no expectation of privacy in their prison cells. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). In reaching this conclusion, the Court stated:

> Determining whether an expectation of privacy is "legitimate" or "reasonable" necessarily entails a balancing of interests. The two interests here are the interest of society in

> the security of its penal institutions and the interest of the
> prisoner in privacy within his cell. The latter interest, of course,
> is already limited by the exigencies of the circumstances: A
> prison "shares none of the attributes of privacy of a home, an
> automobile, an office, or a hotel room." We strike the balance
> in favor of institutional security, which we have noted is "central
> to all other corrections goals[.]" A right of privacy in traditional
> Fourth Amendment terms is fundamentally incompatible with
> the close and continual surveillance of inmates and their cells
> required to ensure institutional security and internal order. We
> are satisfied that society would insist that the prisoner's
> expectation of privacy always yield to what must be considered
> the paramount interest in institutional security. We believe that
> it is accepted by our society that "[l]oss of freedom of choice
> and privacy are inherent incidents of confinement."

*Id.* at 527–28 (internal citation and footnote omitted). The Court concluded that even without a claim based on the Fourth Amendment, prisoners are not without remedies, such as the Eighth Amendment's protection against cruel and unusual punishment. *Id.* at 530.

One court within the Fourth Circuit has suggested that in determining whether a certain act violated a prisoner's right to privacy, the court must determine if there was reasonable necessity for the act. *See Hickman v. Jackson*, 2005 WL 1862425, at *7 (E.D. Va. Aug. 3, 2005). The court concluded that case law suggests "reasonable necessity is intertwined with penological interest: if an inmate's privacy can be maintained without compromising prison operations, then that privacy should be respected." *Id.* Here, the Court finds penological interests outweighed any privacy Plaintiff may have with respect to his medical information. As discussed above, Plaintiff was housed in the SMU, a higher-security section of the prison [*see* Doc. 109-4 ¶ 3], and SMU prisoners require two guards for transport to places such as the medical unit [*id.* ¶ 4]. Further, McCall averred that when there are not enough guards to transport a prisoner to the medical unit and the prisoner's medical need is non-emergent, the prisoner's appointment will be rescheduled.

29

[*Id.*]  Moreover, Lewis averred he did not knowingly divulge Plaintiff's condition to others when Lewis examined Plaintiff at Plaintiff's cell door.  [Doc. 109-8 ¶ 6.]  The Court finds that under these conditions, Lewis's examination of Plaintiff at Plaintiff's cell door was reasonable, and Plaintiff has failed to demonstrate a violation of his right to privacy. Therefore, as to this claim, the Court recommends that summary judgment be granted in favor of Defendants.

*Supervisory Liability of McCall, Ozmint, Rutledge, and Corley*

To the extent Plaintiff seeks to impart supervisory liability upon McCall, Ozmint, Rutledge, and Corley [*see* Doc. 90 ¶ 46–47], those claims must fail because McCall, Ozmint, Rutledge, and Corley cannot be held liable as the remaining defendants' supervisors.  Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), § 1983 defendants are liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).[15]

Plaintiff has failed to establish a § 1983 claim based on a theory of supervisory liability. First, Plaintiff failed to show McCall, Ozmint, Rutledge, and Corley had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which McCall, Ozmint, Rutledge, and Corley should have been aware. Second, Plaintiff failed to show McCall, Ozmint, Rutledge, and Corley acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed above, PCI staff met Plaintiff's medical needs, and, although Plaintiff may disagree with the treatment he received, PCI and SCDC staff were not deliberately indifferent to his medical needs, *see Wright*, 766 F.2d at 849. Finally, Plaintiff failed to establish a causal link between McCall, Ozmint, Rutledge, and Corley's purported inaction and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate that McCall, Ozmint, Rutledge, and Corley's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether McCall, Ozmint, Rutledge, and Corley are liable under a theory of supervisory liability.

---

[15] This is a heavy burden; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at * 2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

*Qualified Immunity*

Defendants argue they are entitled to qualified immunity because their conduct did not violate any clearly-established rights of which a reasonable government official would have known. The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.*

A court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that (1) Russell's first motion to dismiss/motion for summary judgment [Doc. 63] be FOUND MOOT; (2) Plaintiff's motion for preliminary injunction [Doc. 83] be DENIED; (3) Plaintiff's motion for summary judgment as to Russell [Doc. 89] and partial summary judgment as to McCall, Rutledge, Enloe, Lewis, and Murrell [Doc. 89] be DENIED in part and FOUND MOOT in part; (4) Russell's second motion to dismiss/motion for summary judgment [Doc. 94] be GRANTED; (5) Plaintiff's second motion for partial summary judgment as to McCall, Rutledge, Enloe, Lewis, and Murrell [Doc. 106] be DENIED; and (6) Defendants', except Russell, motion for summary judgment [Doc. 109] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

June 30, 2011
Greenville, South Carolina