**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Thomas Pelzer, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:10-cv-00914-RMG |
| ) | |
| v. ) | ORDER |
| ) | |
| Michael McCall, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court upon a recommendation by a Magistrate Judge that (a) Defendant Russell's first Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 63) be found moot; (b) Plaintiff's Motion for Preliminary Injunction (Dkt. No. 83) be denied; (c) Plaintiff's Motion for Summary Judgment as to Defendant Russell (Dkt. No. 89) and Partial Summary Judgment as to Defendants McCall, Rutledge, Enloe, Lewis, and Murrell (Dkt. No. 89) be denied in part and found moot in part; (d) Defendant Russell's second Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 94) be granted; (e) Plaintiff's second Motion for Partial Summary Judgment as to Defendants McCall, Rutledge, Enloe, Lewis, and Murrell (Dkt. No. 106) be denied; and (f) Defendants' (except for Russell) Motion for Summary Judgment (Dkt. No. 109) be granted. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A dissatisfied party may object, in writing, to an R&R within fourteen days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff Thomas Pelzer ("Plaintiff" or "Pelzer") filed timely objections to the R&R.

## BACKGROUND

Plaintiff filed the instant action on or about April 14, 2010, and he has amended his Complaint several times. (See Dkt. No. 1; Dkt. No. 48; Dkt. No. 90.)[1] Plaintiff alleges that Defendants have been deliberately indifferent to his medical needs, that he has received inadequate medical care, and that Defendants have been grossly negligent "regarding Plaintiff's keloids and his receiving skin care." (See generally Compl.) More specifically, Plaintiff complains about the medical treatment he has received for keloids, bleeding gums, cavities, chipped teeth, dry skin, and asthma. (Id.) Plaintiff brings this § 1983 claim alleging violations of his First Amendment, Fourth Amendment, and Eighth Amendment claims, as well as a claim for negligence. (Id.)

## STANDARD OF REVIEW

**A. Legal Standard for Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to

---

[1] Plaintiff amended his complaint on November 23, 2010 (Dkt. No. 48) and on March 7, 2011 (Dkt. No. 90) to add defendants and allegations, as well as relieve Defendant Victoria Balogun ("Balogun"), who was terminated as a party on November 23, 2010. (Dkt. No. 46).

be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**B. Magistrate Judge's R&R**

This Court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Plaintiff's objections, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R.

## ANALYSIS

**A. Defendant Russell**

Defendant Monica Russell ("Russell") filed a Motion to Dismiss or in the alternative for Summary Judgment on January 26, 2011. (Dkt. No. 63.) Although Plaintiff never responded to this motion, he filed a cross-motion for summary judgment as to Russell on March 2, 2011 (Dkt. No. 89), and Russell filed a Response in Opposition. (Dkt. No. 95.) After Plaintiff filed his Second Amended Complaint, Russell filed a Motion to Dismiss or in the alternative for Summary Judgment. (Dkt. No. 94.) Plaintiff responded to this motion.

In the Report and Recommendation, Magistrate Judge Austin recommended finding Russell's first Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 63) moot; denying Plaintiff's Motion for Summary Judgment as to Russell (Dkt. No. 89); and granting Russell's Second Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 94). Magistrate Judge Austin concluded that Plaintiff could not maintain a § 1983 action against Russell because he

failed to exhaust his administrative remedies. (R&R at 11.) "[I]n an abundance of caution," Magistrate Judge Austin also addressed "whether Plaintiff can maintain his causes of action against Russell as if he had exhausted his administrative remedies with respect to his claims against Russell." (Id.) Magistrate Judge Austin concluded that Russell was entitled to summary judgment because, *inter alia*, "Plaintiff has failed to establish that Russell provided treatment so grossly incompetent, inadequate, or excessive as to shock the conscience . . . with a sufficiently culpable state of mind" or that "Russell was grossly negligent as to Plaintiff's health and welfare." (Id. at 15-16.) In his Objections, Plaintiff states that he "'do not' [sic] object" to the Court's recommendation regarding Defendant Monica Russell. (Dkt. No. 146.) The Court therefore grants Russell's Second Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 94); denies Plaintiff's Motion for Summary Judgment as to Russell (Dkt. No. 89); and finds Russell's First Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 63) moot.

## B. Other Defendants

Plaintiff filed a Motion for a Preliminary Injunction against all Defendants (except Russell) on February 24, 2011. (Dkt. No. 83.) Shortly thereafter, on March 2, 2011, Plaintiff filed a Motion for Partial Summary Judgment as to Defendants Michael McCall ("McCall"), Jean Rutledge ("Rutledge"), Amy Enloe ("Enloe"), Benjamin Lewis ("Lewis"), and Deborah Murrell ("Murrell"). (Dkt. No. 89.) On March 21, 2011, all Defendants (except Russell) filed a Motion for Summary Judgment (Dkt. 109), and Plaintiff filed a Response in Opposition. (Dkt. No. 139.)

Title 42, Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

> any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must prove two elements: (1) "that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." Mills v. Greenville County, 586 F. Supp. 2d 480, 485 (D.S.C. 2008) (citing West v. Atkins, 487 U.S. 42, 48 (1988)); see also Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001).

### 1. Deliberate Indifference

The Court will first address Plaintiff's claim that Defendants were deliberately indifferent to his medical needs.[2] Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under § 1983 as a violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." Id. at 104-05. Mere negligence is not actionable under § 1983, however; deliberate indifference "describes a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (discussing Estelle v. Gamble, 429 U.S. at 104); Whitley v. Albers, 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"). Indeed,

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the

---

[2] From this point forward in the Order, when the Court refers to "Defendants," such a reference means all Defendants excluding Russell.

> conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-06.

The Court concludes that there is no genuine issue of material fact regarding whether Defendants were deliberately indifferent to Plaintiff's medical needs; Defendants are entitled to summary judgment. With respect to Plaintiff's keloids, Plaintiff's medical records reveal that he received various treatments for this condition. The Magistrate Judge exhaustively described this treatment, but the Court will also discuss it herein. The Affidavit of Defendant Enloe, a nurse practitioner at Perry Correctional Institution ("PCI"), describes the treatment Plaintiff received for the bumps on the back of his head. (See Dkt. No. 109-6.) Enloe states that Plaintiff was seen by Victoria Balogun, Registered Nurse, on October 20, 2009, "based upon complaints of dandruff and a scab on the back of his head. . . . Nurse Balogun examined Pelzer's head. She noted the presence of a scab with no bleeding or signs of infection." (Dkt. No. 109-6 at 2.) Plaintiff was prescribed tar shampoo, "which can be used to treat itchiness as well as slow bacterial growth, for sixty (60) days to help alleviate his complaints." (Id.) Plaintiff was seen again on November 9, 2009, complaining of "a bump on the back of his head as well as bleeding gums when he brushed his teeth. Upon examination, no bleeding nor irritation were noted to the bumps on the back of his head." (Id.) Plaintiff was not prescribed any additional treatment "[b]ecause [he] was already on tar shampoo." (Id.)

In January of 2010, Plaintiff again complained about the bumps and indicated the tar shampoo was not working. (Dkt. No. 109-2 at 16, Encounter 71.) Although cluster bumps were noted on the posterior part of his head, no bleeding or drainage was noted. (Id.) Plaintiff was prescribed betamethasone cream, which is a corticosteroid used as a topical cream to relieve skin irritation. (Id.) Plaintiff was advised on January 31, 2010, that the betamethasone cream was in the officer's control room. (Dkt. No. 109-7.)

Plaintiff was examined on May 4, 2010, by Adetoro Sobowale, a nurse, who noted a small, tiny bump on the back of his head that was not red or irritated. (Dkt. No. 109-2 at 11, Encounter 91.) On July 27, 2010, Russell examined Plaintiff and noted multiple small bumps on the back of his head but observed no redness, swelling, drainage, or hair loss. (Id.) Russell instructed Plaintiff to keep the area clean and dry. (Id.) After Russell's examination, Enloe prescribed Keflex to treat possible infection and Triamicinolone cream, a topical corticosteroid, to treat inflammatory dermatoses. (Dkt. No. 109-2; Dkt. No. 109-6 ¶ 4.) On August 16, 2010, Plaintiff's prescription for Triamicinolone cream was renewed. (Dkt. No. 109-2 at 7, Encounter 105.) Plaintiff was seen again on September 30, 2010; a few small bumps–looking like razor bumps–were noted on the back of his head, but there was no redness or hair loss. (Dkt. No. 109-2 at 5, Encounter 111.)

Dr. Lewis, a physician with the South Carolina Department of Corrections, examined Pelzer at his cell door on October 7, 2010. (Dkt. No. 109-8.) In his Affidavit, Dr. Lewis states,

> 5. . . .
> b. On October 7, 2010, I examined Pelzer at his cell door. I noted a small cluster of keloids on Pelzer's occipital scalp. No purlence was seen. Keloids are merely scar tissue and can be caused by various skin injuries. For treatment of these keloids, I prescribed Pelzer Colbetasol 0.05% Cream, a topical corticosteroid, and

> Doxycycline to ward against any possible infection. I further advised Pelzer that he would have recurrent problems with keloids.
>
> . . .
>
> 8. Based on my observation of Pelzer on October 7, 2010, for the treatment of his small keloids, Pelzer did not need to receive corticosteroid shots; to undergo surgery, laser, freezing, or radiation therapy; or to wear silicone sheets over the scar. In this case, there is no cause for Pelzer to receive elective cosmetic surgery. The treatment Pelzer has received and will continue to receive at PCI in the form of creams and medications are more than adequate to treat this minor affliction. Pelzer's keloids were not a serious medical problem.

(Id.)

As noted above, Plaintiff also complains about his medical care for skin care and asthma. (See generally Compl.) In her Affidavit, Defendant Enloe states that "[t]he medical staff at PCI does not give lotion to inmates unless it is medically necessary. There is no medical need to prescribe Pelzer a medication for dry skin." (Dkt. No. 109-6 ¶ 5.) Enloe also states,

> Pelzer . . . claims that he is asthmatic and needs an albuterol inhaler. However, he did not complain about asthma on his medical screen upon entry to PCI. Further, to my knowledge, I have not received a specific request for an inhaler from Pelzer. Inmates are not given albuterol inhalers as they can be used as a cuff key. On June 1, 2010, Pelzer complained about trouble breathing. Therefore, I requested that his lung sounds, Oxygen Saturation (95%), and Peak Flow (350 L/min) be taken. In addition to his Oxygen Saturation and Peak Flow being within the normal limits, his lungs were clear to auscultation in all four lobes.

(Dkt. No. 109-6 ¶ 6.)

Finally, Plaintiff complains about his dental care. In his Second Amended Complaint, Plaintiff complains that his began "experiencing a recurrence of bleeding from the gum area" when he brushed his teeth, and that he reported in October of 2009 that he "had 3 tooth cavities in tooth numbers 7, 10, and 12," as well as two chipped teeth. (Dkt. No. 90 ¶ 30.) Plaintiff alleges that he was not seen by the dentist until July 28, 2010, after he filed the instant civil action. (Id. ¶ 35.) Plaintiff further states, "I discovered during this [July 2010] encounter that the

3 cavities I thought I had was not cavities but fillings I must have received in my younger days. The dentist did smoothed a chip to my tooth number 9, and filled 2 cavities I wasn't aware of but did nothing to my other chip tooth or for my bleeding of the gums." (Id.)

Along with their Motion for Summary Judgment, Defendants present the Affidavit of Dr. Hawkins, the only dentist at PCI. (Dkt. No. 109-5.) Dr. Hawkins states that he examined Plaintiff in September of 2009 because of complaints of bleeding gums. (Dkt. No. 109-5 ¶ 3.) Dr. Hawkins states that he examined Plaintiff's teeth; "performed a periodontal scaling, which is a cleaning procedure that removes contamination and infection from beneath the gum"; and prescribed Amoxicillin (500 mg) "to prevent or remove any infection." (Id.) Dr. Hawkins states that on November 5, 2009, Pelzer complained again of bleeding gums when he brushed his teeth. (Id. ¶ 4.) According to Hawkins, "When [Pelzer] was provided treatment by the medical staff at PCI, no bleeding or infection was noted in relation to Pelzer's gums. He was advised to sign up for the dental clinic." (Id.)

Dr. Hawkins' Affidavit explains that Pelzer was seen at the dental clinic on July 28, 2010. (Dkt. No. 109-5 ¶ 6.) Dr. Hawkins states,

> Although [Plaintiff] requested that three cavities be filled in teeth numbers 7, 10, and 12, these teeth had existing amalgams, which were intact. X-rays were performed that showed fillings and no cavities in these teeth. Further exam revealed Pelzer's gingiva to be within normal limits. There was no significant inflammation or infection noted. Decay was found on teeth numbers 2 and 31. The cavities were asymptomatic and of which Pelzer was unaware. Therefore, I filled the cavities in teeth 2 and 31. Finally, although chipped teeth do not generally require treatment, I did smooth a chip on the front of tooth number 9. (Encounter 101; Exhibit A, Dental Health Record). No further treatment was needed.

(Id.)

In the face of all this medical treatment, Plaintiff claims Defendants have been deliberately indifferent to his medical needs. The Court disagrees with Plaintiff. As Magistrate Judge Austin notes, neither an incorrect diagnosis nor disagreement with a doctor's chosen course of treatment state a claim for deliberate indifference. See Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977) (incorrect diagnosis does not constitute deliberate indifference); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (disagreement over treatment plan does not constitute deliberate indifference); Coppage v. Mann, 906 F. Supp. 1025, 1040 (E.D. Va. 1995) ("Neither a misdiagnosis alone nor a disagreement with a doctor's chosen course of medical treatment makes out a claim for deliberate indifference."); see also Daniels v. Williams, 474 U.S. 327 (1986); Broach v. Ozmint, No. 0:08-cv-3471-HMH-PJG, 2009 WL 1956699 (D.S.C. Jul. 7, 2009).

In his Objections, Plaintiff complains about the Magistrate Judge's conclusion that Plaintiff's keloids are not a "serious medical condition." (Objections at 4.) The R&R states, in relevant part,

> [U]nlike the prisoner in *Brock* [*v. Wright*, 315 F.3d 158 (2d Cir. 2003)], Plaintiff has not put forth any objective medical evidence that his keloids cause the pain he alleges he experienced or that his keloids require a certain type of medical treatment. Consequently, the Court finds no basis to conclude Plaintiff's keloids were a serious medical condition and, therefore, finds Plaintiff's keloids were not a serious medical condition.

(Dkt. No. 143 at 15; see also Dkt. No. 143 at 21.) Plaintiff contends that the seriousness of the keloids is shown in part by that fact that on "May 19, 2011, Dr. Lewis injected Plaintiff's keloids with corticosteroid drugs." (Objections at 4.)

This Court simply need not decide the seriousness of Plaintiff's infliction with keloids. Assuming they are serious, Plaintiff has received treatment sufficient to comply with the Eighth

Amendment standards. Plaintiff may have desired corticosteroid injections sooner than he received them, but disagreement with his treatment plan does not amount to deliberate indifference. See Estelle, 429 U.S. 97; Wright v. Collins, 766 F.2d at 849; see also Myers v. Ozmint, No. 9:07-1131-HMH-GCK, 2007 WL 2978662, at *14 (D.S.C. Oct. 10, 2007). Plaintiff contends in his Objections that the pattern of medical care he received shows that Defendants acted with deliberate indifference. (Objections at 5.) He asserts the treatment provided to him was not provided to treat his keloids because "no one knew Plaintiff even had keloids until a year later, after numerous complaints." (Id. at 6.) Plaintiff's allegation that Defendants were not providing treatment for his keloids because they did not know he had keloids is without merit–they did provide treatment for the bumps on Plaintiff's head–bumps which may have later been determined to be keloids. Moreover, the failure to diagnose Plaintiff's condition does not, on the facts herein presented, amount to deliberate indifference. See Estelle, 429 U.S. 97; Daniels, 474 U.S. 327; Blanding v. Sampson, No. 8:07-23-CMC-BHH, 2007 WL 1203534, at *3 (D.S.C. Apr. 23, 2007) ("The facts alleged indicate, at most, that Defendant Sampson misdiagnosed the Plaintiff's medical condition and directed medical treatment based on the misdiagnosis. Negligence and medical malpractice are not constitutional violations and do not state a claim under § 1983.").

Plaintiff did not object to the Magistrate Judge's analysis regarding his claims related to medical care for alleged asthma, dental care, and skin care. The Court thus adopts the Magistrate Judge's Report as to those claims.

### 2. First Amendment Retaliation Claim

In the R&R, Magistrate Judge Austin stated that Plaintiff complains that Defendants "Hawkins and Willis violated Plaintiff's right to redress of his grievances by refusing to respond to Plaintiff's request forms and refusing to provide Plaintiff with dental care because Plaintiff filed a grievance against them." (R&R at 20 (citing Dkt. No. 90 ¶ 43).) The Magistrate Judge recommended granting summary judgment on this claim for several reasons: (a) "there is no constitutional right to a grievance procedure;" (b) "[e]ven if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action;" and (c) there is no genuine issue of material fact regarding whether Hawkins and Willis acted with deliberate indifference in retaliation for Plaintiff's filing a grievance against them because "Hawkins and Willis were not deliberately indifferent to Plaintiff's dental needs because they treated Plaintiff's dental issues." (R&R at 27-28.)

Plaintiff "objects to this section of the court's report and recommendation" first and "[f]oremost because the Plaintiff did not claim that Hawkins and Willis violated his right to redress of grievances by refusing to respond to Plaintiff's request forms." (Objections at 1.) Plaintiff states that he "made two claims against these defendants": (a) the claim that these Defendants violated Plaintiff's Eighth Amendment rights "by deliberate indifference to Plaintiff's serious dental/medical needs" and (b) that the "defendants violated Plaintiff's clearly established 1st Amendment right not to be retaliated against for exercising his 1st Amendment right to seek redress of his grievances." (Id.) Plaintiff states this his claim against Defendants Hawkins and Willis is not based solely "upon a denial to seek redress of his administrative prison grievance" but instead Plaintiff's claim "is that he's been retaliated against for redressing

grievances." (Id. at 2.) Plaintiff asserts that his civil action is the only reason he received dental care from these Defendants because he "did not receive dental care until he filed suit, about a year after filing his grievance on defendants." (Id.)

The history of dental treatment provided to Plaintiff during the relevant period was detailed above. Dr. Hawkins performed a periodontal scaling (cleaning) in September of 2009; when Pelzer was examined on November 5, 2009, no bleeding or infection was noted with respect to Pelzer's gums. On July 28, 2010, Dr. Hawkins performed X-rays of Plaintiff's teeth, filled the cavities in teeth 2 and 31, and smoothed a chip on the front of tooth number 9. In addition, Dr. Hawkins' exam revealed gingiva within normal limits and no significant inflamation or infection. Dr. Hawkins' Affidavit states, *inter alia*,

> 2. I provide dental services and treatment to the inmates at Perry Correctional Institution ("PCI"). I am the only dentist at PCI, which houses around 1000 inmates. To my knowledge, inmates are triaged as to their emergent status for dental treatment with emergencies receiving the first priority and non-emergent inmates receiving the remaining appointments. I do not schedule the inmates for treatment. Additionally, two guards are required to transfer inmates from the Special Management Unit ("SMU"), where Pelzer is housed, to the dental clinic. Therefore, security concerns are also at issue, especially for non-emergent care.
>
> . . .
>
> 5. Pelzer's requests for dental care were not emergent.
>
> . . .
>
> 7. Although Pelzer contends that he wrote numerous requests to me for dental care, the majority of these requests were for teeth cleaning. Unfortunately, because of the security issues involved in the transfer of inmates from SMU, elective teeth cleaning is not an option for inmates housed in SMU.
>
> . . .

> 9. At all times, I was acting within my discretion and duty as a Dentist within the South Carolina Department of Corrections. Further, I have acted in good faith and with proper motives throughout my dealings with Pelzer. . . .

(Hawkins Aff. ¶¶ 2-9; Dkt. No. 109-5.)

In his Objections, Plaintiff points to his allegation that these Defendants "only provided Plaintiff with dental care, almost a year later, because Plaintiff filed a civil action against them." (Objections at 2.) Plaintiff states,

> Hawkins and Willis knew that when they didn't see Plaintiff in November of 2009, as they said, that Plaintiff would comprehend the punitive message brought about due to his complaints upon them. These defendants refused to respond to the Plaintiff's dental request for care, and when Plaintiff filed a grievance they reported that they felt the Plaintiff was abusing the system by making repeated request [sic], despite the fact that they refused to respond to even "one" of the request [sic]. The Plaintiff didn't receive dental care until he filed suit about a year after filing his grievance on defendants. Thus it is clear that if it wasn't for the Plaintiff seeking the court's involvement, he'd probably still to this day be awaiting dental care.

(Id.)

The Court concludes Defendants are entitled to summary judgment on this claim. "Although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment, other circuits have held that prison officials may not retaliate against a prisoner for filing grievances." Johnson-El v. Beck, No. 3:11-cv-115-RJC, 2011 WL 1155679, at *3 (W.D.N.C. Mar. 25, 2011) (citing, *inter alia*, Hill v. Lapin, 630 F.3d 468, 472 (6th Cir. 2010); Gee v. Pacheo, 627 F.3d 1178, 1189 (10th Cir. 2010); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006)); see also Gullet v. Wilt, 869 F.2d 593, at *2 (4th Cir. 1989) (unpublished table decision) (stating that a prisoner's First

Amendment rights are implicated by his claim "that he is being transferred because prison officials are retaliating for [his] numerous institutional grievances").

> To state a First Amendment § 1983 retaliation claim, a plaintiff must establish three elements: (1) the plaintiff's right to speak was protected; (2) the defendant's allegedly retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action.

Johnson-El, 2011 WL 1155679, at *4 (citing Suarez Corp. v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000)).

Assuming Plaintiff presents evidence of elements one and two, Plaintiff does not present sufficient evidence of element three to withstand Defendants' Motion for Summary Judgment. Defendants have presented evidence that inmates are scheduled for a dental appointment depending on their "emergent status," and that dental treatment for emergencies receives first priority, while non-emergent inmates receive the remaining appointments. (Dkt. No. 109-5 at ¶ 2.) Defendants also filed Dr. Hawkins' Affidavit, which states that Pelzer's requests for dental care were "not emergent" and that the "majority" of Pelzer's requests were for a dental cleaning. (Id. ¶¶ 5, 7.) Dr. Hawkins further stated in his Affidavit that he "acted in good faith and with proper motives throughout my dealings with Pelzer." (Id. ¶ 9.)

Plaintiff asserts the causal relationship exists because he filed a grievance in September of 2009; filed the instant lawsuit in April of 2010; and was finally seen by the dentist in July of 2010. (See Objections at 2.) However, "'temporal proximity' between an inmate's protected activity and the allegedly retaliatory official action 'is simply too slender a reed on which to rest' a § 1983 retaliation claim." Johnson-El, 2011 WL 1155679, at *5 (quoting Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993)); see also Huggins v. Braxton, No. 7:11CV00017, 2011 WL

Page 15 of 18

322831, at *3 (W.D. Va. Jan. 31, 2011). The Court therefore concludes Defendants are entitled to summary judgment on this claim.

### 3. Right of Privacy

Plaintiff alleges that Dr. Lewis violated Plaintiff's right to privacy by announcing in his dorm, while other inmates were present, that Plaintiff had keloids. In analyzing this claim, the Magistrate Judge cited Hudson v. Palmer, 468 U.S. 517, 525-26 (1984), for the proposition that "prisoners have no expectation of privacy in their prison cells." (R&R at 28.) The Magistrate Judge also stated,

> One court within the Fourth Circuit has suggested that in determining whether a certain act violated a prisoner's right to privacy, the court must determine if there was reasonable necessity for the act. See Hickman v. Jackson, 2005 WL 1862425, at *7 (E.D. Va. Aug. 3, 2005). The court concluded that case law suggests "reasonable necessity is intertwined with penological interest: if an inmate's privacy can be maintained without compromising prison operations, then that privacy should be respected." Id.

(R&R at 29.) Magistrate Judge Austin found that in the instant case, "penological interests outweighed any privacy Plaintiff may have with respect to his medical information." (Id.) The Magistrate Judge therefore recommended that summary judgment be granted in favor of Defendants on this claim. (Id. at 30.)

Plaintiff objects to this recommendation because, *inter alia*, "there is no assertion by defendants that there wasn't [sic] enough guards 'that day' to transport Plaintiff to the medical building thus the court has improperly found that Lewis's examination of Plaintiff at his cell door was reasonable." (Objections at 3.) Plaintiff further objects to summary judgment in Defendants' favor on the grounds that Lewis "has claimed he did not knowingly divulge Plaintiff's condition" because (a) a doctor "is aware of the sensitiveness of medical information to people in general";

(b) the record does not show any penological interest which outweighed Plaintiff's privacy in his medical information"; (c) even if Plaintiff could not have been transported to the medical building, he "still could have been taken to the medical/sick call room in the SMU"; and (d) Lewis does not assert that he "attempted to see Plaintiff in the sick call room in the SMU or medical building but was unable to." (Id. at 3-4.)

As the Magistrate Judge noted, the Supreme Court held in Hudson that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells . . . ." Hudson, 468 U.S. at 530; see also Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992) ("With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment."). In Taylor v. Best, 746 F.2d 220, 225 (4th Cir. 1984), the Fourth Circuit upheld a requirement that prisoners divulge personal information about their family background to prison officials, concluding that any privacy interest the prisoner had was outweighed by the interest of assuring prison security. The Seventh Circuit in Anderson v. Romero, 72 F.3d 518, 523 (7th Cir. 1995), stated, "We cannot find any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records."

In the case *sub judice*, the Court agrees with the Magistrate Judge that Plaintiff has failed to demonstrate a violation of his right to privacy on these facts. As Magistrate Judge Austin noted, Plaintiff was housed in the SMU, a high-security section of the prison, such that two guards were required to transport such prisoners to the medical unit. While Plaintiff asserts that his appointment could have simply been cancelled or rescheduled, such possibility does not mean his constitutional rights were violated. In any event, even if this Court were to conclude that

Lewis violated Plaintiff's constitutional rights, Lewis would still be free from liability, as he is entitled to qualified immunity. The Court therefore concludes Defendants are entitled to summary judgment on Plaintiff's claim for violation of his privacy rights.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant Russell's second Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 94) is **GRANTED**; Defendant Russell's First Motion to Dismiss/Motion for Summary Judgment (Dkt. No. 63) is **FOUND MOOT**; Plaintiff's Motion for Preliminary Injunction (Dkt. No. 83) is **DENIED**; Plaintiff's Motion for Summary Judgment as to Russell and Partial Summary Judgment as to the remaining Defendants (Dkt. No. 89) is **DENIED**; Plaintiff's Second Motion for Partial Summary Judgment (Dkt. No. 106) is **DENIED**; Defendants' (except for Russell) Motion for Summary Judgment (Dkt. No. 109) is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
The Honorable Richard Mark Gergel
United States District Judge

**Charleston, South Carolina**
**July 22, 2011**